UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELODIE AGNELLO, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>TWIN HILL ACQUISITION COMPANY, INC., et al.,<br><br>  Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO REMAND**<br><br>Case No. 18-cv-02756-JCS<br><br>Docket No. 23 |
| HEATHER POOLE, et al.,<br><br>  Plaintiffs.<br><br>  v.<br><br>TWIN HILL ACQUISITION COMPANY, INC., et al.,<br><br>  Defendants. | Related Case No. 18-cv-02758-JCS<br><br>Docket No. 19 |
| ROSEMARY MACKONOCHIE et al.,<br><br>  Plaintiffs.<br><br>  v.<br><br>TWIN HILL ACQUISITION COMPANY, INC., et al.,<br><br>  Defendants. | Related Case No. 18-cv-02761- JCS<br><br>Docket No. 19 |
| ALEXANDRA HUGHES, et al.,<br><br>  Plaintiffs.<br><br>  v.<br><br>TWIN HILL ACQUISITION COMPANY, INC., et al.,<br><br>  Defendants. | Related Case No. 18-cv-02762-JCS<br><br>Docket No. 19 |

## I. INTRODUCTION

These four related cases were originally filed as separate actions in California Superior Court for the County of Alameda. Defendants removed them under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), after the plaintiffs filed a single amended complaint ("the First Amended Complaint" or "FAC") covering all of the parties and claims in the actions. Plaintiffs now bring motions to remand ("Motions") asking this Court to remand all of the actions to Alameda Superior Court and award fees and costs incurred as a result of the allegedly improper removal pursuant to 28 U.S.C. § 1447 (c). The Court finds that the Motions are suitable for determination without oral argument and therefore vacates the motion hearing set for August 31, 2018 pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motions are GRANTED in part and DENIED in part. In particular, the Court remands these actions to Alameda Superior Court but denies Plaintiffs' request for an award of attorneys' fees.[1]

## II. BACKGROUND

### A. State Court Proceedings

This case involves four actions in which the plaintiffs, who are employees of American Airlines, assert negligence and product liability claims based on allegations that the uniforms their employer required them to wear contain harmful chemicals that have caused personal injury to the plaintiffs.

The first action was filed on September 27, 2017, when ninety-eight plaintiffs, including plaintiff Heather Poole, filed a Complaint against Twin Hill Acquisitions Company ("Twin Hill") and its parent corporation, Tailored Brands, LLC, in California Superior Court, County of Alameda, in a case entitled *Heather Poole et al. v. Twin Hill Acquisition Company et al.* (state court case number RG17876798, hereinafter "*Poole*"). Mazzella Decl., ¶¶ 3-4 & Ex. 1 (*Poole* complaint). The *Poole* complaint made a demand for a jury trial and plaintiffs posted jury fees. Mazzella Decl., ¶ 3. *Poole* was assigned to Judge Brad Seligman. Mazzella Decl., ¶ 3.

On October 30, 2017, another group of ninety-nine plaintiffs filed a separate lawsuit in the

---

[1] The parties in all of these related cases have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

same court against the same defendants entitled *Melodie Agnello et al. v. Twin Hill Acquisition Company et al.* (state court case number RG17880635, hereinafter "*Agnello*"). Mazzella Decl., ¶¶ 5-6 & Ex. 2 (*Agnello* complaint). Like the *Poole* complaint, the *Agnello* complaint demanded a jury trial and plaintiffs again posted jury fees. Mazzella Decl., ¶ 5. Plaintiffs filed a notice of related case on November 1, 2017 to relate the *Poole* and *Agnello* cases. Constantini Decl., ¶ 2 & Ex. A (Notice of Related Case).

On November 28, 2017 and November 29, 2017, the Court entered Orders designating the *Poole* and *Agnello* matters as "Complex." Mazzella Decl., ¶¶ 7-8 & Ex. 3 (Case Management Orders dated Nov. 28, 2017 and Nov. 29, 2017). On December 14, 2017, *Agnello* was also assigned to Judge Seligman. Mazzella Decl., ¶ 9.

On December 11, 2017, Defendants filed demurrers in the *Poole* and *Agnello* cases. Defendants also filed motions to strike requests for punitive damages in the *Poole* and *Agnello* complaints. On January 18, 2018 and January 30, 2018, the parties filed their Joint Complex Case Management Conference Statements in *Poole* and *Agnello*¸ respectively. Mazzella Decl., ¶¶ 10-12 & Exs. 4 (*Poole* CMC Statement), 5 (*Agnello* CMC Statement). In these statements Plaintiffs informed the court that in addition to the *Poole* and *Agnello* actions, counsel anticipated filing at least two additional complaints, each naming fewer than 100 new plaintiffs involving the same claims. In both Case Management Statements, Plaintiffs stated:

> In short, it is possible there will be at least four separate but related complaints with up to 99 plaintiffs on each complaint…alleging the same claims against the same set of defendants. Counsel for all parties are working together to develop a way to streamline the management of these multiple lawsuits.

*Id.*

On February 5, 2018, Plaintiffs dismissed Tailored Brands Purchasing LLC from the *Poole* and *Agnello* cases and added as a defendant Tailored Brands Inc. *See* Mazzella Decl., Exs. 6-7.

On February 20, 2018, Judge Seligman held a hearing on Defendants' demurrers and motions to strike in the *Poole* and *Agnello* cases, as well as a case management conference. Mazzella Decl., ¶¶ 14, 17. The superior court issued identical orders in both cases, denying the motions to strike and sustaining the demurrers with leave to amend. Mazzella Decl., ¶¶ 14-16 &

Exs. 6 (Order re *Poole* Demurrer/Motion to Strike), 7 (Order re *Agnello* Demurrer/Motion to Strike). In the orders, the superior court addressed the sufficiency of the factual allegations in the "complaints in each case," finding that Plaintiffs needed to amend to include, either as text or as an exhibit to the complaint, the specific illness suffered by each plaintiff and to identify the specific toxin(s) each plaintiff alleges was a substantial factor in bringing about their injuries. Mazzella Decl., Exs. 6, 7 at p. 2. The superior court further ordered Plaintiffs "to file any First Amended Complaint on or before [March 23, 2018]." Mazzella Decl., Exs. 6, 7; *see also* Spielberger Decl., ¶¶ 2-3.

At the case management conference held on the same day as the motions hearing, plaintiffs' counsel (Mazzella and Spielberger) told the court that they intended to file two additional complaints with fewer than 100 plaintiffs and the "court suggested that Plaintiffs consolidate the cases into one consolidated complaint to streamline pretrial proceedings – *i.e.*, to avoid multiple hearings and motions." Mazzella Decl. ¶ 17; *see also* Spielberger Decl. ¶ 3. According to Mazzella and Spielberger, neither attorney stated or suggested that Plaintiffs intended to try the cases together. *Id.* Further, although it appears to be undisputed that Judge Seligman asked Plaintiffs if there was any reason the cases should remain separate and Plaintiffs did not offer any reason, *see* Herrington Decl., ¶ 3, it is also undisputed that the specific question of whether the cases should be tried together was not discussed at the case management conference. *See* Herrington Decl. ¶ 3. Nor is there any dispute that the superior court did *not* consolidate the two cases at the February 20, 2018 case management conference. Constantini Decl., Exs. B, C. The superior court set a further case management conference for April 27, 2018.

After the February demurrer hearing, Plaintiffs' counsel spent a significant amount of time gathering from the plaintiffs the information required to cure the defects identified by the superior court on the demurrers. Spielberger Decl. ¶ 4. In addition, one of the law firms representing the plaintiffs suffered a ransomware attack that caused the firm's computer system to be shut down for two weeks and resulted in a loss of several pleadings and records in the cases. Mazzella Decl., ¶ 18. Consequently, Plaintiffs needed an extension of time to file the amended complaint. Spielberger Decl. ¶ 4. The parties agreed to a new filing date of April 6, 2018. *Id.*

4

On April 2, 2018, attorney Anastasia Mazzella contacted defense attorney Leanna Constantini via email to request another extension of the deadline in order to allow the parties to clarify the superior court's order related to the filing of a single complaint. Constantini Decl., Ex. G; *see also* Mazzella Decl. ¶ 19. Mazzella states in her declaration that she and attorney Spielberger realized that the court's order to file a single complaint presented "procedural problems" and therefore, having "no desire to try these cases jointly," [she] decided it would be best to obtain the court's guidance and clarification before filing the amended pleading." Mazzella Decl. ¶ 19. In her email to Constantini, Mazzella stated, in part:

> There is some confusion on our end about what the court wanted us to do with the new plaintiffs we've retained since filing the *Agnello* action back in October. I recall the Court telling us to add them to the consolidated complaint, but since the cases have not been *ordered* consolidated, it's unclear whether the new plaintiffs will be assigned to the *Poole* or *Agnello* action or whether they will get assigned a new case number. To avoid us submitting a complaint that is bounced back, we were wondering if you would be willing to grant us another two-week extension – to April 20 – so we can either work out a way to resolve this between the parties or discuss this issue with the Court at the next CMC on April 17th.

Constantini Decl., Ex. G.

On April 5, 2017, defense attorney Constantini rejected the request for an extension in an email stating as follows:

> While we are generally amenable to working with you when more time is needed, we cannot agree to the requested extension given the reason provided. At the last CMC, the judge asked whether there was any reason there should be separate cases and suggested that the amended complaint be consolidated to avoid having to deal with duplicative filings for three cases. Neither parties [sic] indicated any reason to have the cases separate. As such, we don't believe there is any confusion or need for clarification from the Court.

*Id.* Plaintiffs' counsel then asked for a brief extension to April 10, 2018 to complete the complicated pleading, which defense counsel granted. Spielberger Decl. ¶ 5.

Plaintiffs filed a First Amended Complaint ("FAC") on April 10, 2018. Mazzella Decl., ¶ 21. The FAC's caption listed both the *Poole* and *Agnello* case numbers and identified the *Agnello* case as a related case. The caption also included the words "Jury Trial Demanded." *Id*. The FAC listed all of the plaintiffs in the four cases, but the *Poole* and *Agnello* plaintiffs were listed

5

separately according to their assigned case numbers. Mazzella Decl, Ex. 8. In addition, the FAC separately listed over 100 new plaintiffs and indicated that these plaintiffs had "NO CURRENT CASE NUMBER" assigned. *Id*. Plaintiffs also attached a single exhibit to the FAC listing the plaintiffs and their symptoms. *Id*., Ex. 8 (Complaint), Ex. A attached thereto. Plaintiffs split the exhibit into Sections A and B, with the *Poole* and *Agnello* Plaintiffs under Section A and "Newly Added Plaintiffs" under Section B.

On April 10, 2018, the same date the FAC was filed, the parties filed a Joint Complex Management Conference Statement in *Poole*. Mazzella Decl., Ex. 9 (*Poole* CMC Statement). In the case management statement, Plaintiffs stated that they had filed the FAC in response to the court's "suggest[ion] [that] Plaintiffs consolidate the cases into one amended complaint to streamline the litigation." *Id*. at 6. They further noted the "FAC lists an additional 126 individuals who were retained since the *Agnello* complaint was filed in October" and explained:

> These new plaintiffs are adopting the allegations in the FAC, however, since the cases have not been ordered consolidated, Plaintiffs believe these plaintiffs should be assigned new case numbers and their cases related to the original *Poole* and *Agnello* actions. The purpose of Plaintiffs listing the new plaintiffs on the FAC is to avoid filing multiple demurrers, motions to strike, answers, hearings, etc. Plaintiffs' counsel intends to raise this issue with the Court at the CMC on April 17, 2018 for further discussion and clarification on whether the new plaintiffs should be assigned separate case numbers (perhaps in two groups of less than 100 plaintiffs).

*Id*.

On April 17, 2018, the superior court held a case management conference. Mazzella Decl. ¶ 25. Plaintiffs' counsel describes the case management conference as follows:

> Plaintiffs explained to the court that the FAC was simply an attempt to streamline the pretrial proceedings, and requested the court either assign case numbers to the new plaintiffs or allow plaintiffs to file separate complaints with less than 100 plaintiffs each. The court acknowledged that plaintiffs were trying to avoid CAFA removal and then ordered the case consolidated for pretrial purposes only and instructed plaintiffs to file separate complaints for each group of plaintiffs.

Mazzella Decl. ¶ 25; *see also* Spielberger Decl. ¶ 7 & Ex. 10 (April 17, 2018 Case Management Order (stating "[t]he court relates this case to *Agnello* RG17880635, and consolidates these cases

for pre-trial purposes."). Defense counsel does not materially dispute this account of the CMC but notes that "at the CMC Plaintiffs' counsel did not state that they did not intend to try their claims jointly" but "instead asked the court how it wanted the cases to be structured." Herrington Decl. ¶ 4.

On April 27, 2018, pursuant to the court's order, Plaintiffs filed the Second Amended Complaints in *Poole* and *Agnello*. Mazzella Decl. ¶¶ 27-29 & Ex. 11 (*Poole* SAC), Ex. 11 (Agnello SAC). In addition, Plaintiffs filed two new complaints naming the plaintiffs previously listed without case numbers in the FAC and additional plaintiffs who had been retained since April 10, 2018: *Alexandra Hughes v. Twin Hill* (Case Number RG18902727) ("*Hughes*"), which named 98 plaintiffs, and *Rosemary Mackonochie v. Twin Hill* (Case Number RG18902720) ("*Mackonochie*"), which named 32 new plaintiffs. Mazzella Decl., ¶¶ 27, 30-31 & Exs. 13 (*Hughes* Complaint), 14 (*Mackonochie* Complaint). The *Hughes* and *Mackonochie* complaints demanded jury trials and plaintiffs posted jury fees in both cases. *Id.* On May 4, Plaintiffs served the four complaints by mail. Mazzella Decl., ¶ 32.

On May 10, 2018, Defendants removed all four related cases to this Court asserting that there is federal jurisdiction under CAFA based on the filing of the First Amended Complaint in state court, which Defendants contend was a proposal to try all four cases jointly.

**B. Motions**

In the Motions to Remand, Plaintiffs contend they never proposed to try the cases jointly and that they filed a single First Amended Complaint only in an attempt to comply with the order of the superior court. They further assert that to the extent the First Amended Complaint was no longer operative at the time of the removal, Defendants' removal of the actions was improper because the existence of federal jurisdiction depends on the operative complaint at the time or removal. According to Plaintiffs, as the operative complaints at the time of removal established that they were pursuing four separate actions and that the cases were consolidated for pretrial purposes only, CAFA jurisdiction did not exist at the time of removal. Plaintiffs also argue that even if there had been a proposal to try the cases jointly, Defendants have not satisfied the amount in controversy requirement under CAFA. Finally, Plaintiffs ask the Court to award attorneys' fees

7

1 incurred in connection with the improper removal because Defendants knew that Plaintiffs never intended to try the cases jointly and took advantage of a "procedurally defective pleading" to remove the case, causing undue expense and delay.

### III. ANALYSIS

#### A. Legal Standards Governing Removal Under CAFA

As a general rule, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Under CAFA's mass action provisions, district courts have original federal jurisdiction over actions that involve: (1) 100 or more plaintiffs whose "monetary relief claims are proposed to be tried jointly;" (2) common questions of law or fact between the plaintiffs' claims; (3) "minimal diversity," whereby at least one plaintiff is diverse from one defendant; (4) aggregated claims totaling in excess of $5 million; and (5) at least one plaintiff's claim places more than $75,000 in controversy. 28 U.S.C. § 1332(d)(11)(B); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006) (holding that where not even one plaintiff satisfied the $75,000 jurisdictional amount requirement of § 1332(a), applicable to mass actions by virtue of § 1332(d)(11)(B)(i), there was no CAFA jurisdiction but declining to decide whether *every* plaintiff must meet this requirement to satisfy CAFA).

In general, there is a "strong presumption" against removal and courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

#### B. Whether More than 100 Plaintiffs Have Proposed to Try Their Claims Jointly

As none of the cases that was removed to this Court involved 100 or more plaintiffs, CAFA jurisdiction exists only if Plaintiffs proposed to try the claims in the related cases (or at least two of them, in any event) jointly. Based on the current record, it is readily apparent that the FAC that Plaintiffs filed in state court did not constitute such a proposal and therefore, that

8

removal of the related cases was improper.[2]

The Ninth Circuit has held that "consistent with the plain language of CAFA, . . . the proposal to try claims jointly must come from the plaintiffs, not from the defendants. *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1223 (9th Cir. 2014) (citing *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009)); *see also* 28 U.S.C. § 1332(d)(11)(B)(ii)(II) ("the term 'mass action' shall not include any civil action in which . . . the claims are joined upon motion of a defendant."). Further, it is well established that in enacting CAFA, Congress intended to permit plaintiffs to structure their lawsuits so as to avoid removal to federal court. *Tanoh v. Dow Chem. Co.*, 561 F.3d at 953 ("Congress anticipated, . . . that defendants . . . might attempt to consolidate several smaller state court actions into one 'mass action,' and specifically directed that such a consolidated action was not a mass action eligible for removal under CAFA."); *Dunson v. Cordis Corp.*, 854 F.3d 551, 554 (9th Cir.), cert. denied, 138 S. Ct. 471 (2017) ("Plaintiffs' lawyers are free to file multiple lawsuits with fewer than 100 plaintiffs based on the same factual allegations, even if their purpose in doing so is to avoid federal jurisdiction."). Likewise, plaintiffs must propose to *try* their claims jointly; CAFA's definition of "mass action" expressly excludes any

---

[2] Plaintiffs argue that the Court need not reach the question of whether the FAC constituted a proposal to try the cases jointly because it was no longer the operative complaint at the time of removal. Without actually deciding that question, the Court notes that it has found no case law that addresses the scenario here, where a complaint that is alleged by the removing party to reflect a desire to try multiple cases together had already been superseded by separate complaints at the time of removal. Moreover, the rule cited by Plaintiffs, that courts look to the operative complaint at the time of removal, was drawn from a case in which the court was determining whether there was federal question jurisdiction and did not involve a removal under CAFA. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). As Defendants point out in their brief, courts considering the existence of CAFA jurisdiction sometimes consider evidence outside of the pleadings. *See, e.g., Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1224 (9th Cir. 2014) (relying on plaintiffs' petition for coordination in support of finding that plaintiffs requested a joint trial even though they filed multiple complaints, each of which involved fewer than 100 plaintiffs). Further, in *Benko v. Quality Loan Services Corp.,* 789 F.3d 1111, 1117 (9th Cir. 2015), the Ninth Circuit held that the district court erred in failing to consider allegations in an amended complaint that the plaintiffs attempted to file after removal that the court had rejected as futile in determining whether there was jurisdiction under CAFA. *See Benko v. Quality Loan Services Corp.,* 789 F.3d 1111, 1117 (9th Cir. 2015). While the court's reasoning in *Benko* was tied to the specific issue in that case, namely, whether the local defendant rule precluded removal, it does suggest that the Ninth Circuit does not adhere to a rigid rule that only the operative complaint at the time of removal may be considered in determining whether there is jurisdiction under CAFA. Because the Court finds that removal was improper for other reasons, the Court declines to reach the question of whether removal was improper solely because the FAC was no longer the operative complaint at the time of removal.

9

civil action in which the plaintiffs' claims "have been consolidated or coordinated solely for pretrial proceedings." 28 U.S.C. § 1332(d)(11)(B)(ii)(IV).

A request for a joint trial may be either explicit or implicit. *Corber*, 771 F.3d at 1225 (citing *In re Abbott Labs., Inc*., 698 F.3d 568, 572 (7th Cir. 2012)). "[A]n implicit proposal may be found when all of the circumstances of the action, including the language of the complaint and the structure of the action, lead to the assumption that the claims will be tried jointly." *Ramirez v. Vintage Pharm., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (citing *In re Abbott Labs.*, 698 F.3d at 573). In *Corber*, the Ninth Circuit addressed whether the plaintiffs in multiple actions involving the same claims and parties had implicitly proposed to try the claims jointly when they filed a petition to coordinate under California Civil Code section 404. 771 F.3d at 1220. The court acknowledged that plaintiffs are "masters of their complaint" when it comes to CAFA jurisdiction, but also found that they are "masters of their petitions for coordination." *Id*. at 1223. Consequently, the court explained, "[w]e will carefully assess the language of the petitions for coordination to see whether, in language or substance, they proposed a joint trial." *Id*. The court went on to find that the petition in that case stated that the plaintiffs wished to coordinate "for all purposes," which "must include the purpose of trial." *Id*. The court further found that the specific reasons given for coordination, including avoiding inconsistent judgments, would only be addressed through a joint trial. *Id*. The court noted that while not all petitions to coordinate constitute a request for a joint trial, the petition in that case did because the plaintiffs "requested more than pre-trial coordination." *Id*. at 1224. Conversely, the plaintiffs' petition did not "expressly seek[] to limit its request for coordination to pre-trial matters." *Id*.

In *Ramirez*, upon which Defendants in this case rely heavily, the court relied primarily on the language and the structure of the original complaint in support of its conclusion that the plaintiffs had proposed a joint jury trial under CAFA. There, the plaintiffs filed a single complaint in which each count concluded with the statement that the plaintiffs "respectfully request[ed] a jury trial" and did not state anywhere in the complaint or prayer for relief that the plaintiffs were seeking *multiple* jury trials. *Id*. In addition to the language in the complaint that suggested the plaintiffs were not seeking to try their claims separately, the court observed that

10

merely by asserting all of their claims in a single complaint the plaintiffs conveyed that they intended to try them together: "Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Id*. The court went on to address a statement in the complaint cited by the plaintiffs that the "claims have been filed together . . . for purposes of case management on a mass tort basis," finding that it was too ambiguous to rebut the presumption that they were proposing a joint trial because it "provide[d] no indication that they [sought] coordination *only* for pretrial proceedings." *Id*. at 330. The court explained that the plaintiffs could have avoided CAFA jurisdiction by including a "clear and express statement in the Complaint evincing an intent to limit coordination of claims to some subset of pretrial proceedings." *Id*. Likewise, "no effort was made to structure the action in a way that would preclude CAFA jurisdiction, which would have been as easy as filing two actions—each with less than 100 claims—instead of a single action with all 113 claims." *Id*. As a result, the court concluded, it was "left with a litany of indications that a joint trial was proposed and no conclusive countervailing indication to serve as a rebuttal." *Id*. at 331.

The facts here are distinguishable from both *Ramirez* and *Corber*. First, the circumstances surrounding the filing of the First Amended Complaint in this action are markedly different from the situation in *Ramirez*. Here, Plaintiffs initially filed separate complaints with under 100 plaintiffs in each – just as the *Ramirez* court suggested the plaintiffs in that case might have done if they did not intend to propose a joint trial. Plaintiffs only filed a consolidated complaint in response to a court order. That order was somewhat ambiguous, however, especially in light of the discussion that occurred at the February 20, 2018 case management conference. There appears to be no real dispute as to what occurred. The superior court issued an order that discussed the complaints (in the plural) that were the subject of the demurrers and ordered the plaintiffs to file a First Amended Complaint (in the singular) to cure these defects. At the case management conference, the court also asked Plaintiffs if there was any reason the cases should remain separate, raising the possibility that the actions would be consolidated. Nonetheless, the court did not order the cases consolidated. Although Plaintiffs requested a brief extension of the deadline to

11

file the First Amended Complaint so that the matter could be clarified at the upcoming case management conference, Defendants refused to stipulate to the extension. Moreover, many statements by Plaintiffs' counsel indicate that they did not intend to propose a joint trial of 100 or more plaintiffs. In the CMC statements of January 18 and 30, Plaintiffs' counsel state that there will be "four separate" but related complaints of "up to 99 plaintiffs" each. On February 20, 2018, Plaintiffs' counsel advised the court of their intent to file "two additional complaints" with fewer than 100 plaintiffs each. Counsel did not understand the court's suggestion of consolidation for streamlining purposes to mean that the cases would all be tried together. Indeed, after the FAC was filed the parties agreed that the cases had not been ordered consolidated and Plaintiffs' counsel sought separate case numbers each with fewer than 100 plaintiffs. Mazzella Decl., Ex. 9. Under these circumstances, the First Amended Complaint was not a proposal by Plaintiffs to try the cases jointly but simply an attempt to comply with the court's order.

The facts here are also distinguishable from *Corber* in that the petition filed in that case was not filed in response to a court order. Moreover, the *Corber* petition used specific language supporting the conclusion that the plaintiffs were voluntarily requesting that the cases be tried together, asking that the cases be consolidated "for all purposes." No such broad language was used in the First Amended Complaint, which listed the plaintiffs by case number and separated out the new plaintiffs who had no case number yet assigned.

It is true that the First Amended Complaint does not contain the kind of "clear and express" language that the courts in *Ramirez* and *Corber* found would have allowed the plaintiffs in those cases to avoid CAFA jurisdiction. This may be because Plaintiffs believed the superior court intended that the cases would be tried together at the time they filed the First Amended Complaint – an interpretation of the court's order that would have been reasonable under the circumstances. The Court concludes that the absence of such language in the First Amended Complaint at most gives rises to a presumption that Plaintiffs were requesting a joint trial. The surrounding circumstances discussed above clearly rebut that presumption, however.

In sum, the Court finds that Plaintiffs did not intend to propose a joint trial when they filed the First Amended Complaint and that the CAFA requirement that there must be more than 100

plaintiffs who seek to have their claims tried jointly has not been met.[3]

### C. Request for Attorneys' Fees

Pursuant to 28 U.S.C. § 1447(c), where removal is found to be improper the Court has discretion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 448 (9th Cir. 1992). The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). While the Court has found that removal was improper, it does not find that Defendants' basis for removal was objectively unreasonable. Therefore the Court declines to exercise its discretion to award fees and costs.

## IV. CONCLUSION

The Motions are GRANTED in part and denied in part. The Court orders all of the removed cases to be remanded to Alameda Superior Court. Plaintiffs' request for attorneys' fees is DENIED.

**IT IS SO ORDERED.**

Dated: August 20, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

---

[3] Because the Court finds that Plaintiffs have not proposed a joint trial of the four related cases, it need not reach the question of whether the amount-in-controversy requirement has been met.

13